UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| FREDRICK BLODGETT, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | 2:18-CV-00015-DCLC-DCP |
| | ) | |
| vs. | ) | |
| | ) | |
| FAF, INC., D/B/A FORWARD AIR TRANSPORTATION SERVICES, INC. | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This case is before the Court on multiple pending motions: Plaintiff's Motion to Certify Class Conditionally under the FLSA [Doc. 32], Defendant's Motion for Summary Judgment [Doc. 41], Defendant's Objections to the order denying its Motion to Strike [Doc. 65], and the parties' Joint Motion to Vacate Case Management and Trial Deadlines [Doc. 86]. The undersigned as the magistrate judge assigned to this case denied Defendant's Motion to Strike. Since Defendant has filed its objection, this case was transferred to the undersigned as District Judge. Therefore, the Court will consider Defendant's Objections as a motion for reconsideration regarding the denial. All motions have been fully briefed and a hearing was held on December 3, 2019. They are now ripe for resolution.

Given the evidence presented, the Court GRANTS Defendant's Motion for Summary Judgment [Doc. 41] and DENIES AS MOOT Plaintiff's Motion to Conditionally Certify Class [Doc. 32], Defendant's Objections [Doc. 65], and the parties' Joint Motion to Vacate Case Management and Trial Deadlines [Doc. 86].

**I.  Factual and Procedural Background**

Plaintiff Fredrick Blodgett alleges that Defendant FAF, Inc. misclassified Plaintiff, and

1

potentially other similarly situated individuals, as an independent contractor rather than an employee and failed to pay him at least the federal minimum wage for all hours worked under the Fair Labor Standards Act, 28 U.S.C. §§ 201, *et seq*. ("FLSA") [Doc. 17, ¶ 2]. On October 26, 2018, Plaintiff filed a motion to certify the class conditionally under the FLSA pursuant to 29 U.S.C. § 216(b). *See* [Doc. 32]. In response to that motion, Defendant sought to exclude the Plaintiff's expert report [Doc. 37]. It also objected to conditional certification [Doc. 38].

On December 14, 2018, after the parities engaged in discovery, albeit limited and by agreement, Defendant filed a motion for summary judgment claiming that even assuming that Plaintiff was an employee covered by FLSA, he, nevertheless, earned in excess of the FLSA's minimum wage for the only workweek he identified in his Amended Complaint and his deposition. On January 25, 2019, Plaintiff filed a Response, opposing the motion, claiming that he was not paid consistent with FLSA requirements [Doc. 46]. On February 15, 2019, Defendant replied [Doc. 50].

Before the Court then are two sets of competing motions. First is Plaintiff's motion to conditionally certify the class [Doc. 32]. Many courts within and outside the Sixth Circuit have adopted a two-stage process for determining whether an FLSA action should proceed as a collective action. *See, e.g., Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 547 (6th Cir. 2006). In this process, the Court determines based on the complaint and some modest factual allegations, whether there is a colorable basis for their claim that the putative class is "similarly situated" with regard to plausibly alleged claims. If so, the Court generally permits opt-in notification and additional discovery. This standard is "fairly lenient" and typically results is conditional certification of the class for purposes of notification. *Id*. at 547. At this stage, the existence of

2

significant individualized issues does not preclude conditional certification. *See White v. MPW Indus. Servs., Inc.*, 236 F.R.D. 363, 367 (E.D. Tenn. 2006).

But this motion for conditional certification was not addressed before Defendant filed in December 2018 his motion for summary judgment. If the Court grants Defendant's motion for summary judgment, then this case ends and there is no need to address conditional certification. The procedural posture in this case is somewhat unique because while the Court does not address the merits of the wage claim at the conditional certification stage, the Court can address it once discovery has occurred and the parties file a motion for summary judgment, usually to decertify a class previously conditionally certified. *See Swigart v. Fifth Third Bank*, 276 F.R.D. 210, 214 (S.D. Ohio 2011) (citing *Burdine v. Covidien, Inc.*, No. 1:10cv194, 2011 WL 2976929, at *2-4 (E.D. Tenn. June 22, 2011)). But in this case, there has not been a conditional certification, but a motion for summary judgment to dismiss the case. Plaintiff has responded to the motion and did not claim that it could not address the merits of the motion because of lack of discovery. Thus, the Court finds it is proper to address the motion for summary judgment first.

## II.  FACTS

Plaintiff worked for Defendant as a commercial truck driver. Defendant classified him as an "independent contractor," "lease-purchaser," and/or "owner-operator." [Doc. 17, ¶ 15, 17]. When driving for Defendant, Plaintiff was required to log his hours in accordance with the Hours of Service Regulations ("HOS Regulations") contained in the Federal Motor Carrier Safety Act, 49 C.F.R. pt. 395. *See* [Doc. 46, pgs. 4-6]. This includes classifying his time as either "on duty driving," "on duty not driving," "off duty sleeper berth," or "off duty," which Plaintiff did in accordance with the regulations [Doc. 41-1, pgs. 75-84; Doc. 50-1, pg. 13, lns. 7-9; pg. 15, lns. 14-23].

Plaintiff alleges that Defendant failed to pay him the required minimum wage under the FLSA [Doc. 17, ¶ 82]. Plaintiff specifically claims that during a one-week period beginning December 8, 2015, he was paid a total of $1,640.16, with additional fuel surcharges and layover payments of $524.70, and Maintenance Reimbursements of $680.00, bringing the total pay to $2,844.86 [*Id*. at ¶ 83; Doc. 32-6, pg. 3]. From that amount, Defendant made various deductions which totaled $2,569.45, reducing his net check to $275.41. Most of those deductions were business related, but not all. Deducted from his check were personal voluntary deductions: a Comdata cash advance of $100.10; a maintenance reserve deduction of $100.00; and a health insurance payment of $170.77 [Doc. 32-6, pg. 3]. These additional voluntary deductions totaled $370.87.

Plaintiff initially alleged in his Complaint that he worked a total of 49.2 hours during the relevant week, based upon his number of miles driven and the average rate of speed of 40 miles per hour, as well as the average nine hours spent performing administrative tasks [Doc. 17 at ¶ 85-86]. Considering a net pay of $275.41 and a total of 49.2 hours worked, Plaintiff claims that his hourly wage was $5.60, well below the $7.25 per hour minimum wage required by law.

Defendant challenges Plaintiff's net pay calculation. Rather than his net pay being $275.41, Defendant argues that Plaintiff's voluntary withholdings should be added back into his pay for purposes of determining whether FLSA has been violated. That would include the cash advance, the voluntary maintenance reserve withholding, and payment for his health insurance. When those charges are added to Plaintiff's net pay, his actual pay is $646.28. But that creates a problem for Plaintiff if his total hours for that week are only 49.2 as that would be the equivalent of an hourly wage of $13.14.

4

When confronted with this issue, Plaintiff stepped back and reassessed what his hours worked were in his response to Defendant's Motion for Summary Judgment. First, rather than claiming he worked 49.2 hours as he had before, Plaintiff claimed that he "felt" he was on duty 24 hours a day when he was on the road [Doc. 46, pgs. 7, 13]. Thus, he revised his hours from 49.2 to 168, and that revision, he argues, results in an hourly wage of only $3.82 ($646.28/168) [*Id*. at pg. 13-15]. In support of this contention, Plaintiff cites to 29 C.F.R. § 788.22, which specifically provides for payment of wages for the entire 24-hour period for those employees required to be on-duty 24 hours, unless they have otherwise agreed to exclude certain time for sleeping and meals [*Id*. at pg. 12]. Second, Plaintiff claims that even if the Court were to find that the parties implicitly agreed to exclude 8 hours of sleeping time, (which Plaintiff claims did not occur) then his weekly hours were 112, which corresponds with an hourly wage of $5.73 [*Id*. at pg. 13, 15]. Under either scenario, Plaintiff claims, Defendant has violated the minimum wage requirement imposed by FLSA.

Defendant contends that Plaintiff wrongfully assumed he was on-duty 24 hours. Defendant contends that Plaintiff "does not allege that FAF required he be on duty 24 hours/day." [Doc. 50, pg. 3]. It cites to the Hour of Service ("HOS") Regulations, which expressly prohibit Plaintiff as a commercial truck driver from being on-duty for more than 14 hours a day. *See* 49 C.F.R. § 395.3(a)(2) ("A driver may drive only during a period of 14 consecutive hours…."). The time spent in the sleeper berth is considered off-duty under the HOS Regulations. 49 C.F.R. § 395.2.

Plaintiff logged all his time in accordance with the HOS Regulations. But more importantly, Plaintiff understood Defendant's HOS Program that when he logged his time as off-duty, that meant something. It meant that he was "relieved of all duty and responsibility for the

5

care and custody of vehicle (truck, tractor and trailer), its accessories, and any cargo it may be carrying." [Doc. 50-1, Blodgett Depo. 325:4-326:13]; *see also* Regulatory Guidance for the Federal Motor Carrier Safety Regulations, 62 Fed. Reg. 16370-01, 16422 (April 4, 1997). Plaintiff admitted that when he logged his time as "off-duty" he was free to leave the truck and follow his own personal pursuits. [Doc. 50-1, Blodgett depo., pg. 323:1-10]. He admitted that no one from Defendant advised him that he was required to be on-duty 24 hours [*Id.*, Blodgett depo., pg. 342:12-18]. In fact, Plaintiff acknowledged that 99% of his work would be completed in under 14 hours and he would log off duty once he arrived at his destination. [*Id.*, Blodgett depo., pg. 203:1-204:10]. When he was in the sleeper berth, he was either sleeping or taking care of personal business, not that of his employer. [*Id.*, Blodgett depo., pg. 182:5-23; 185:21-186:1].

### III. Legal Standard

Under Fed.R.Civ.P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Ultimately, the court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The burden of proving that no genuine dispute of fact exists is strictly upon the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). As such, the court must consider the evidence and "draw all reasonable inferences in favor of the nonmoving party." *National Satellite Sports, Inc. v. Eliadis, Inc.*, 253, F.3d 900, 907 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

However, once the moving party has presented sufficient evidence to support summary judgment, the nonmoving party "must point to evidence in the record upon which a reasonable

finder of fact could find in its favor." *Machoka v. City of Collegedale*, No. 1:17-CR-203-TAV-CHS, 2019 WL 1768861, at *3 (E.D. Tenn. Apr. 22, 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The nonmoving party "may not rest upon mere allegation or denials of his pleading but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. Specifically, the alleged factual dispute must be material. *Anderson*, 477 U.S. at 248.

**IV.     Analysis**

The Federal Labor Standards Act ("FLSA") requires each employer to pay the federal minimum wage and provide overtime to those employees covered by the Act's overtime provisions. *See* 29 U.S.C.A. § 206(a)(1)(C). The employer must pay any covered, non-exempt employees who work more than forty hours per workweek for "employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). If the employer fails to pay under those terms, then the employer is "liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

"[S]everal courts have held that an employer meets the minimum wage requirements if the total weekly wage paid is equal to or greater than the number of hours worked in the week multiplied by the statutory minimum hourly wage." *U.S. Dept. of Labor v. Cole Enterprises, Inc.*, 62 F.3d 775, 780 (6th Cir. 1995); *see Sutton v. CHSPSC, LLC*, 2018 WL 3318961, *9 (W.D. Tenn. July 5, 2018). "An FLSA plaintiff must prove by a preponderance of evidence that he or she performed work for which he or she was not properly compensated." *Myers v. Copper Cellar Corp.*

192 F.3d 546, 551 (6th Cir. 1999) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946)) (internal quotation marks omitted).

> Assuming a week-long pay period, the minimum wage requirement is generally met when an employee's total compensation for the week divided by the total number of hours worked equals or exceeds the required hourly minimum wage, and the overtime requirements are met where total compensation for hours worked in excess of the first forty hours equals or exceeds one and one-half times the minimum wage.

*Stein v. HHGREGG, Inc.*, 873 F.3d 523, 537 (6th Cir. 2017).

The employee may also bring a "collective action" on behalf of other "similarly situated" employees who expressly consent in writing to join the suit. 29 U.S.C. § 216(b). Most trial courts that have addressed collective actions approach those cases in two steps. The first step is considered "conditional certification" and permits a modest factual showing that the named plaintiff and the proposed collective, or the putative opt-in plaintiffs, have been aggrieved in some similar manner. If that modest standard is met, then the court putative class members receive notice regarding their ability to op into the action. *See Monroe v. FTS USA, LLC*, 763 F. Supp. 2d 979, 987 (W.D. Tenn. 2011).

Despite the modest factual showing necessary, an employee must nevertheless show that he or she was not compensated in accordance with the standards set forth by the FLSA. At this initial stage, most of the cases do not deal with whether a FLSA violation has occurred and whether this particular plaintiff has not been compensated in accordance with the FLSA, but on whether there are others similarly situated that would warrant a conditional certification.

But to focus solely on whether there are others does not remove the obligation to focus on the initial plaintiff to begin with. If the initial plaintiff cannot show that his employer has failed to comply with FLSA standards it can hardly be said he would be an ideal plaintiff to represent a class. After all, the case is about violations of FLSA happening to the people named in the suit and

must be prosecuted by employees aggrieved. If the employee/plaintiff is not aggrieved, the FLSA case must end at that point. *See Keller v. Miri Microsystems LLC,* 781 F.3d 799, 816 (6th Cir. 2015)( "[A] FLSA plaintiff must prove by a preponderance of evidence that he or she performed work for which he or she was not properly compensated").

### A. Was Plaintiff on duty for 24 hours or more under the FLSA?

If there is no dispute that if Plaintiff only worked 49.2 hours for the week in question, then he has not shown a violation of FLSA. Thus, his contention that he actually should be paid for 168 hours must be addressed. Plaintiff states that he "never considered himself completely off-duty unless he was back at home and no longer carrying a load." [Doc. 46-6, Blodgett depo., pg. 322:2-17]. According to Plaintiff, all time that he spent away from home, including time spent in the sleeper berth, should be considered compensable time under the FLSA [Doc. 46, pg. 7]. Under 29 C.F.R. § 785.22, absent an agreement to exclude up to eight hours for meals and sleeping, the full 24 hours constitute hours worked.

Defendant argues that Plaintiff is not *per se* on duty for 24 hours or more under FLSA just because he works as a truck driver. There is no authority cited by either party to suggest that commercial truck drivers are always on duty 24 hours a day. Instead, it is fact specific, and in this case, there is no dispute as to any material fact on this issue. Defendant claims that Plaintiff has not proven that, he was, in fact, on duty for 24 hours or more. That Defendant did not consider Plaintiff on duty 24 hours or more while away from home does not ultimately decide this case. Indeed, while it may be somewhat insightful to know how an employer treats an employee's time, many times it is that very treatment that violates FLSA. In other words, more analysis is required, especially here where calculating compensable hours is in dispute. To address that issue, the Court turns to the facts of this case.

9

For Plaintiff to be an aggrieved employee under the FLSA, he must show he was paid less than minimum wage for hours worked. To do that, he asks the Court to assume that all the time he spent away from home was compensable. But that is a leap not supported by the facts. To be sure, time an employee spends waiting, sleeping or traveling may be compensable. *See Ruffin v. MotorCity Casino*, 775 F.3d 807, 811 (6th Cir. 2015) ("Whether time is spent predominantly for the employer's or the employee's benefit depends on the totality of the circumstances"). For example, if an employee is "engaged to wait," that is, the employee "is unable to use the time effectively for his own purposes" and the time "belongs to and is controlled by the employer," then that time is compensable. *See* 29 C.F.R. § 785.14 & 15. The Regulations apply this in the context of a truck driver engaged to wait: "A truck driver who has to wait at or near the job site for goods to be loaded is working during the loading period." 29 C.F.R. § 785.16(b). On the other hand, a driver who is "waiting to be engaged" is not entitled to compensation for that time. *Id*. The Regulations provide the following as an illustration: "if the truck driver is sent from Washington D.C. to New York City, leaving at 6 a.m. and arriving at 12 noon, and is completely and specifically relieved from all duty until 6 p.m. when he again goes on duty for the return trip, the idle time is not working time. He is waiting to be engaged." *Id*. It is important to note that the truck driver is not at home in the illustration, but in New York City when he is relieved from all duty. That idle time is not compensable.

In this case, Plaintiff's argument that he was on duty for 24 hours is not supported by the undisputed facts. He does not claim that his work schedule was a regular schedule "in name only" and that he was required to work on a "helter-skelter basis at any time during the day or night." *Petrone v. Werner Enterprises, Inc.*, 2017 WL 510884, *6 (D. Neb. Feb. 2, 2017) (citing Field Operations Handbook ("DOL Handbook"), 31b02, at 4, (current as of August 10, 2016), *available*

*at* http://www.dol.gov/whd/FOH/FOH_Ch31.pdf (internal citation omitted)). Nor does he claim that he has a regular schedule but the time off is "so cut through with frequent work calls that this time is not his … own." *Id.* Thus, Plaintiff has not shown that he should be considered "on duty 24 hours a day" based on his job duties and his hours worked.

Again, that does not end the analysis. The next issue is whether, notwithstanding the particulars of his specific work schedule, should he, nevertheless, be considered on duty 24 hours a day based on the type of work that he does: that is, a long-haul truck driver. He claims that 29 C.F.R. § 785.22 supports his classification as being on duty 24 hours a day. This Regulation provides for the exclusion of no more than 8 hours a day from compensable time for sleeping (assuming adequate sleeping facilities are provided) if the employer and employee agree to exclude sleeping time. If they do not agree, then the time sleeping is compensable. Here Plaintiff claims his time is compensable because he had no agreement to exclude that time.

29 C.F.R. § 785.41 applies directly to truck drivers and specifically excludes the time a truck driver spends sleeping, assuming adequate facilities are provided: An employee who drives a truck … is working while riding, except … when he is permitted to sleep in adequate facilities furnished by the employer. 29 C.F.R. § 785.41. This regulation specifically excludes from working the time Plaintiff contends is compensable. Thus, this regulation creates the presumption that the time Plaintiff spends sleeping is not compensable. He has done nothing to rebut that presumption. *See Petrone v. Werner Enterprises, Inc.*, 2017 WL 510884, *7 (D. Neb. Feb. 2, 2017) (holding that "under the plain language of the regulations, time in the sleeping berth is presumably non-compensable under § 785.41"); *Kennedy v. LTI Trucking Services, Inc.*, 2019 WL 4394539, *3 (E.D. Mo. Sept. 13, 2019) ("[p]laintiff is not entitled to the presumption that her sleeper berth time was compensable"); *Nance v. May Trucking Co.*, 2014 WL 199136, at *8 (D.

11

Or. Jan. 15, 2014)(finding that as a matter of law even if the truck were moving, being driven by another employee, time spent in the sleeper berth is not compensable).

Not every district court has reached this same conclusion, and Plaintiff points that out. He cites *Browne v. P.A.M. Transp., Inc.*, No. 5:16-CV-5366, 2018 WL 5118449 (W.D. Ark. Oct. 19, 2018). The district court in *Browne* found that the DOT regulations addressing on-duty status have nothing to do with the Department of Labor regulations. *Id.* at 3. "The DOT regulations aim to make our roads safe, while the DOL regulations aim to provide workers adequate compensation." *Id.* The district court found that if DOT regulations prohibit a driver from driving for more than 14 hours in a 24-hour period while the DOL regulations require the employers to pay them for at least 16 hours during that same time period, then that "would simply be a cost of doing business that the federal government has seen fit to impose on employers of commercial truck drivers…." *Id.* In other words, the district court addressed the interplay between §§ 785.22 and 785.41. But *Browne* is not insightful because it presumes the application of § 785.22, that the employer *requires* the driver to be on-duty for more than 24 hours, which would then limit the number to 8 hours the employer could exclude from compensation. Take away that premise and *Browne* is easily distinguishable.

As noted *Browne* is distinguishable based on the specific undisputed facts of the case. Plaintiff has not presented any evidence that he was required to be on duty for 24 hours or more, a requirement for the application of § 785.22. For § 785.22 to apply, he must be "required to be on duty 24 hours or more." 29 C.F.R. § 785.22. He has not shown that. In fact, if anything, he has shown that he is not required to be on duty 24 hours or more. When he enters the sleeper berth, his time is his own, and he is otherwise free to leave his truck and go about his own business without any obligation to his employer whatsoever.

12

Plaintiff stated that while in the sleeper berth of the truck, he would sleep, call home, pay his personal bills, and otherwise take care of personal as opposed to company, business. [Doc. 50-1, Blodgett depo., pg. 182:5-23]. He acknowledged that "when [he] logged time as off-duty, [he was] acknowledging that [he was] free to leave the truck and pursue activities of [his] own choosing" [*Id*., Blodgett depo., pg. 323:1-10]. In fact, he acknowledged that being off-duty and logging those hours as such meant that he was "relieved of all duty and responsibility for the care and custody of the vehicle (truck, tractor, and trailer), its accessories, and any cargo it may be carrying" as stated in Defendant's "Hours of Service Program" [*Id*., Blodgett depo. pg. 325: 4-326:18; Doc. 50-1, pg. 77]. Plaintiff's claim that he was on-duty 24-hours or more was not based on anything conveyed by Defendant, implicitly or explicitly, but based on "just something [he] felt." [*Id*., Blodgett depo., pg. 324:12-18].

This is the problem with Plaintiff's claim. It is not based on the facts but on Plaintiff's feeling. His testimony is simply too equivocal, conclusory and lacking in relevant detail to create a genuine dispute of material fact under Rule 56. "Just as a plaintiff may not rely on conclusory allegations to proceed past the pleading stage, … so too a plaintiff may not rely on conclusory evidence to proceed past the summary-judgment stage….Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment." *Viet v. Le*, No. 18-6191, 2020 WL 1146708, at *3 (6th Cir. Mar. 10, 2020)(citations and quotations omitted).

The Sixth Circuit addressed the problem of a plaintiff making conclusory estimates about his average workweek. *Id.* In *Viet,* Viet claimed that "he typically worked 60 hours per week." *Id.* at *4. But the Court required more than his "bare assertion." *Id*. The Court noted that Viet's "testimony would leave a jury simply guessing at the number of hours he worked in any given

13

week" and held that "conclusory estimates about an employee's average workweek" would not be sufficient to withstand summary judgment. *Id.* at \*5. It found that Viet had failed to present evidence that created a genuine dispute of material fact about the defendant's purported FLSA liability.

Although this case deals with minimum wage and not overtime, the same principles apply here. The Court is left with nothing more than Blodgett's feelings about how many hours he worked and his prior contradictory statements regarding the same. The Court is mindful that employees do not face a heavy burden when it comes to estimating the number of hours worked in a workweek. As the Sixth Circuit has made clear, "they need not 'recall their schedules with perfect accuracy in order to survive a motion for summary judgment.'" *Id.* quoting *Moran v. Al Basit LLC*, 788 F.3d 201, 205 (6th Cir. 2015). They simply must demonstrate their work schedules "so a rational jury could find that they worked more than 40 hours in the weeks claimed." *Id.* Blodgett has not done that. As such, he has not proven that he was on continuous duty for all of the time he spent away from home, i.e. for 24 hours a day. Therefore, the Court is left only with the finite number of hours work as stated in the Complaint.

**B. Was Plaintiff paid less than minimum wage for the number of compensable hours he worked?**

Having determined that Plaintiff did not work 24-hour days, the Court is left with Plaintiff's assertion in his Amended Complaint that he worked a total of 49.2 hours for the week beginning on December 8, 2015 [Doc. 17, ¶ 86]. Plaintiff's net pay for that period was $275.41 after all deductions [Doc. 17, ¶ 84-85]. He originally argues that given that net pay, his hourly wage was $5.60, which would be below minimum wage [*Id.*]. These facts alone would constitute an FLSA violation.

However, as Defendant points out, several of those deductions were personal elections

14

made by Plaintiff, including $100.00 cash advance, $100.00 contribution to his maintenance reserve, and $170.77 for voluntary health insurance. If those elections were part of Plaintiff's net take-home pay, then he would have made $646.28. Considering a total of 49.2 hours worked, this would give Plaintiff an hourly wage of $13.14, well over minimum wage.[1]

Plaintiff acknowledges that all these deductions were elective. As to the $100 cash advance, Plaintiff agreed that he was able to take that as "an advance on the monies that were owed to [him] for that settlement period" since he was under load at the time [Doc. 41-1, Blodgett depo., pg. 289:5-10]. If Plaintiff had not requested and taken that money in advance, then he would have received that $100 on his paycheck. Plaintiff also acknowledges that the $170.77 was payment for an elected health insurance premium [*Id.*, Blodgett depo., pg. 290:22-291:12, 296:15-23]. This insurance was not required by Defendant. Lastly, the $100 maintenance reserve was a voluntary election to go towards any future repairs for Plaintiff's truck [*Id.*, Blodgett depo., pg. 292:25-293:12]. By agreement, Plaintiff chose to have $100 put into this reserve every paycheck. Plaintiff could have also used this money for something not related to his truck or his job; a driver could request an amount of money from the reserve, and it could be used for any purpose [*Id.*, Robert Lucas depo., pg. 227:13-18; *Id.*, Lucious Coleman depo., pg. 92:5-93:16]. This money belonged to the driver, not Defendant.

Each of these deductions was voluntary, and Plaintiff chose to have Defendant deduct them for this pay period. Plaintiff could have chosen not to take these deductions, and an additional $370.77 would have been added to his paycheck, allowing him to do whatever he wished with that money [*Id.*, Blodgett depo., pg. 297:7-13]. Therefore, the Court finds that this money should be

---

[1] Also, calculating his hours another way: 49.2 hours can be broken down into 40 hours times $7.25, giving $290.00, and 9.2 hours times $10.88 (which is time and a half), is $100.05. The total of both is $390.05. Blodgett's weekly wage still far exceeds that required under FLSA.

15

included for purposes of determining his weekly wage.

Considering a net pay of $646.28, Plaintiff received an hourly wage of $13.14 for the 49.2 hours he worked. That is substantially above minimum wage. It is also substantially above minimum wage for 40 hours worked and for 9.2 hours overtime pay. Therefore, Plaintiff has failed to show that he was paid less than minimum wage under FLSA and Defendant's Motion for Summary Judgment is **GRANTED**.

### C. Was Defendant's motion premature?

At the end of Plaintiff's 20-page response, he states that the Court should not dismiss his claims until "he has had the opportunity to conduct full discovery on the merits" [Doc. 46, pg. 20]. Plaintiff asserts that the discovery had been focused on the issue of conditional certification and that additional discovery is needed to defend the claims made in Defendant's Motion for Summary Judgment. While Plaintiff argues he should be "permitted to conduct substantial merits-based discovery before being required to defendant his claims from summary judgment," he fails to identify the discovery it claims it needs, and how it would be relevant to the Court's analysis. [Doc. 46, pg. 20]. Defendant filed its motion on December 14, 2018, which pursuant to E.D. Tenn. Local Rule 7.1, would make Plaintiff's response due January 4, 2019. On December 20, 2018, the parties filed a Stipulation [Doc. 43] which allowed, among other things, Plaintiff to respond through January 25, 2019 "in light of the upcoming holidays and the interrelated nature of the motion." Plaintiff filed his response on January 25, 2019.

At no time during the briefing process nor at the hearing nor at any time in between has Plaintiff requested additional time or leave to conduct more discovery on the issue of Plaintiff's wage claim. Even now in his response, Plaintiff does not suggest with any particularity what he hopes to find with additional discovery. For example, Plaintiff does not argue that Defendant has

16

not provided driver logs or settlement sheets for additional weeks that Plaintiff worked. Plaintiff has also not filed an "affidavit or declaration that, for specified reasons, [shows] it cannot present facts essential" to respond to the motion for summary judgment under Fed.R.Civ.P. 56(d). Instead, Plaintiff responded to the motion, putting forth almost 20 pages of argument and approximately 112 pages of attachments in opposition of Defendant's motion, only briefly arguing that the motion is premature, seemingly as a last resort. It is clear by the record before the Court on both Plaintiff's Motion to Certify Class and Defendant's Motion for Summary Judgment that party depositions have been taken and extensive discovery has been produced by Defendant. Therefore, the Court finds that Plaintiff has given no reason for the Court to delay ruling on Defendant's motion for summary judgment.

## V.     Plaintiff's Motion to Conditionally Certify the Class [Doc. 32]

Plaintiff also submitted settlement sheets and testimony for opt-in plaintiffs Lucious S. Coleman and Robert Lucas. *See generally* [Doc. 46, 46-4, 46-5, 46-8, 46-9]. Regardless of the validity of their individual claims, the validity of this case rests on the named Plaintiff. That plaintiff, in this case Mr. Blodgett, "bears the burden of showing that [he] and the opt-in plaintiffs are similarly situated." *White v. Baptist Memorial Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012). However, the Court has found that Plaintiff has failed to substantiate a claim for a minimum wage violation under the FLSA. "Therefore, without a viable claim, [Plaintiff] cannot represent others whom [he] alleged were similarly situated. Just as opt-in plaintiffs are not similarly situated to a lead plaintiff if their claims are dismissed, a lead plaintiff cannot be similarly situated and represent opt-in plaintiffs without a viable claim." *Id.* at 878.

As the Court has granted Defendant's Motion for Summary Judgment and found Plaintiff's claim not to be viable, the case must be dismissed. Therefore, Plaintiff's motion to conditionally

17

certify the class must be **DENIED AS MOOT**.

**VI.    Defendant's Objections to Order Denying Motion to Strike [Doc. 65] and Joint Motion to Vacate Case Management and Trial Deadlines [Doc. 86]**

Defendant has filed objections to the undersigned's denial of its Motion to Strike an expert report and testimony in support of Plaintiff's motion to conditionally certify the class. The parties also filed a joint motion requesting that the scheduling order in this case be vacated pending the resolution of the pending motions. As the Court has granted Defendant's Motion for Summary Judgment, denied Plaintiff's motion to conditionally certify a class, and dismissing the case, these motions are also **DENIED AS MOOT**.

**VII.    Conclusion**

Based on the foregoing, the Court **GRANTS** Defendant's Motion for Summary Judgment [Doc. 41] and **DENIES AS MOOT** Plaintiff's Motion to Certify Class Conditionally under the FLSA [Doc. 32], Defendant's Objections [Doc. 65], and the Joint Motion to Vacate [Doc. 86]. A separate order dismissing this case shall enter.

SO ORDERED:

s/ Clifton L. Corker
United States District Judge